■ In the Matter of LORI BON, Appellant, v HOWARD SAFIR et al., Respondents. [763 NYS2d 616] —Judgment, Supreme Court, New York County (Michael Stallman, J.), entered on or about April 4, 2001, which denied petitioner police officer's application to annul respondents' determination denying her an accident disability retirement pension, and dismissed the petition, unanimously affirmed, without costs.

Petitioner sustained a line of duty injury to her trigger finger in 1986 when another police officer closed a police car door on her finger. She was treated in the emergency room of Montefiore Hospital and Medical Center, where, however, no X rays were taken. Thereafter petitioner worked full duty, consistently qualifying with firearms, until 1994, when she failed to requalify because, as she informed the training instructor, the pain and swelling in her trigger finger prevented her from maintaining a proper grip on her weapon.

The Medical Board reviewed petitioner's application for accident disability retirement benefits six times. After the first two reviews, it disapproved petitioner's application, but after the third review, which cited new evidence, it rescinded its earlier disapproval and approved the application. At that point, the Board of Trustees remanded the case to the Medical Board for reconsideration of the causal connection between petitioner's 1986 injury and her disability 12 years later.

In the minutes of its fourth review, the Medical Board noted that the Pension Board remanded the case because of the "long history without disability and the fact that [petitioner] was functioning well on full duty and the fact that there was no medical treatment from 1986 to 1998." On remand, the Medical Board considered a 1994 report from petitioner's internist, Dr. Salvatore Conte, which stated that he saw her on the date of her emergency room visit at Montefiore and often since then "with no improvement," that petitioner's finger was still stiff, painful and edematous, and that she would have difficulty performing her duties. The Board also considered a 1995 report from Dr. Conte that stated that petitioner had been followed

regularly and had pain, numbness and deformity of her right index finger and that, despite treatment with nonsteroidal anti-inflammatory drugs, her condition had steadily worsened. The Board commented that there was no indication in either of Dr. Conte's reports of a physical examination or treatment plan.

The Medical Board also summarized a 1995 report from Dr. Robert Taffet, who stated that petitioner had had chronic pain in her right index finger since her accident in 1986, that she had not undergone any hand therapy, and that she had been treated with anti-inflammatory medication, and a 1996 report in which Dr. Taffet stated that he doubted petitioner would be able to return to work on active duty as a police officer. The Board summarized petitioner's present complaints, which included pain, numbness and stiffness of her right index finger exacerbated by activity and relieved by rest and an inability to repeatedly pull the trigger at the pace required by the police department firing range, and the results of her physical examination, which included such findings as some swelling, tenderness, nondermatomal sensory loss of the right hand, and decreased sensation of the second ray of the right hand. The Board stated that when asked to pull the trigger of an empty revolver, "it appeared that [petitioner] made a less than maximal effort in performing this maneuver." The Board then concluded that, "[b]ecause of the discrepancy in physical findings and the apparent absence of treatment from 1986 to 1994," Board members Drs. Gilbert Young and Louis Lombardi felt that petitioner was able to perform the full duties of a New York City police officer and therefore voted to rescind the previous decision and recommend disapproval of petitioner's application. Dr. Frank Guellich, the Medical Board's hand specialist, voted to reaffirm the Board's previous approval of accident disability retirement benefits.

Six months later, the Medical Board, citing new evidence, rescinded that decision and unanimously approved accident disability retirement benefits for petitioner. The Board noted that since its last decision petitioner had qualified with her weapon using her right index finger supported with the left index finger for 24 rounds and using her left hand for the remaining 26 rounds fired. The Board stated that the "competent causal factor is the line of duty injury of September 22, 1986. The diagnosis is central slip tear with residuals right index finger. This determination is based upon an administrative policy which requires the officer to use the right index finger to fire a weapon."

Again the Board of Trustees remanded the case to the Medical Board, which, after its sixth review, and citing new evidence, stated that Drs. Young and Lombardi believed that petitioner was disabled and unable to perform the usual duties of a New York City police officer but that they had "serious reservations regarding causality and the documentation of actual examinations (physical findings) and treatment of her right index finger injury of 1986. It is difficult to explain why this officer was able to perform full duty from 1986 to 1994 (eight years)." The Medical Board identified the new evidence as updated letters from Dr. Conte and Dr. Matei S. Roussan, a rehabilitation specialist who had examined petitioner previously and upon reexamination found progressive decrease in the range of motion, pain and functional use of her finger, and Pension Board minutes dated March 10, 1999. Drs. Young and Lombardi voted to rescind the previous decision and recommend disapproval of petitioner's application for accident disability retirement benefits. Dr. Guellich, the hand specialist, voted to reaffirm the previous decision approving accident disability retirement benefits.

At the subsequent Board of Trustees meeting, the physician present stated that, after speaking to Dr. Guellich, the hand specialist, he thought that petitioner's right index finger central slip tear with residuals could have begun as trauma and degenerated over time. Still, one of the Board members said he would be "a little more comfortable if we could see the records between '86 and '94 along the way where he was actually treating her * * *. I would like to see actually a treatment plan over just the dates, because for eight years she saw an internist * * *. I would gather that possibly an internist would have referred her to somebody sooner, to an orthopedist, someone with a specialty in the hand." As a result, the Board tabled its decision on the application pending receipt of Dr. Conte's complete records. The record reflects that Dr. Conte provided the requested records, but the minutes of the Board of Trustees' meeting of December 8, 1999 reflect no discussion of those, only that the Medical Board had recommended disapproval of petitioner's application.

Petitioner presents a persuasive argument that the disabling injury to her trigger finger for which she was retired with ordinary benefits must necessarily have been caused by the 1986 accident because she never suffered any other trauma to that finger and, were we hearing this case on appeal after trial, we undoubtedly would find the Board's contrary determination to clearly be against the weight of the evidence. Unfortunately,

however, the standard for judicial review of police pension board determinations enunciated by the Court of Appeals in *Matter of Borenstein v New York City Employees' Retirement Sys.* (88 NY2d 756, 760-761 [1996]) constrains us to leave the determination undisturbed because the fact that petitioner's disabling symptoms did not manifest themselves until eight years after the accident, during which time she never received orthopedic treatment, constitutes "some credible evidence" to support it. Concur—Nardelli, J.P., Mazzarelli, Rosenberger, Ellerin and Gonzalez, JJ.